Next we have Espiritu Santo Holdings v. Libero Partners, No. 19-1665. May it please the Court, I'm Brian Sutherland on behalf of Libero Partners. I'd like to reserve two minutes, please, for rebuttal. On May 2nd of 2019, ES Holdings raced into court to prevent what it perceived to be wrongful competition with the partnership in connection with an imminent May 15 registration deadline in Monterey, Nuevo Leon. And the emergency that it perceived was that Libero Partners was about to divert an irreplaceable business opportunity to a third-party competitor. And that's why the petition and the order to show cause asked for two things and two things only. Don't compete with us and don't steal our trade secrets. We responded to those two theories of irreparable harm. We defeated both of them. And after we did that, we learned for the first time when the district court issued its opinion that there would be a different theory of irreparable harm, which was the deprivation of management rights. And the district court said so itself, saying on page 46 of the special appendix, ES Holdings has established irreparable harm, but not the irreparable harm that it identified in its papers. The district court spoke to what the focus of the papers was, but it seemed to me that in her extensive discussion of the breaches of the partnership agreement and the course of the party's dealings, she was resting her characterization on those very same items that had been subject to the party's dispute and so on. And so though it's been characterized as a sua sponte, like new theory, it really wasn't. Why am I wrong in that view? Well, because of what the prayer for relief and what the order to show cause say, they both refer to competitive activities and to misappropriation of trade secrets. And the court rejected both of those theories of harm. Those are the ones that we responded to. But those theories of harm are still related to loss of management control. And she then offered to the moving party an opportunity to present a form of injunctive relief that they'd request. You had an opportunity to respond. And then she ruled and contoured the injunctive relief to reflect that interchange. What's wrong with that? The identified irreparable harm relates to a loss of management control. The loss of management control is a breach of the partner's agreement, if there's a likelihood of success on that issue. And then after identifying the breach, which is the deprivation of management rights, the next task for the court is to identify the irreparable harm that flows from that breach. They identified two. There's going to be a registration deadline in Monterey, and there's going to be an unauthorized third-party competitor entering the scene. That was the emergency that prompted them to go into court. And it's essential to identify what the harm is that flows from loss of management control. I have a somewhat different. What is the state of the arbitration panel now? Is it in place? The arbitrators have been named, but arbitration proceedings have not begun, Your Honor. But then aren't all of these issues really ones which should be dealt with by the arbitrator? I mean, the whole idea of what was going on was that you had gone into Mexico and had brought criminal charges and had tried to stay the arbitration, even though the contract was absolutely clear that there should be arbitration. So then they come in and ask for all sorts of injunctions and other things, and the Court, in a very sloppy set of arguments, comes up and gives them everything they want. But shouldn't what we do essentially now is say, come on, this is an arbitration. Let the arbitrators decide. Well, I agree with you completely, Your Honor. All of these issues are contested. All of them belong in arbitration. We look forward to the arbitration. We have nothing to hide. Well, but you say you look forward to the arbitration, but you went to Mexico to block it. So it's a bit nice for you to say now we're fine with the arbitration. But in the original thing, you both brought criminal charges and sought to block the arbitration. So are we really on to the arbitration? We would like to be on to the arbitration. I can only answer that question, yes. The suit relating to blocking the arbitration in Mexico has been withdrawn, and the facts surrounding the criminal charges in Mexico are hotly disputed and will also be the subject of the arbitration proceeding. So the question that I would like this Court to ask is, what is it that the arbitrators cannot do to restore E.S. Holdings to a position that it previously occupied? And the answer is nothing because they will not suffer any irreparable harm if this Court vacates the injunction or if the district court had denied the injunction. I would like the Court, if it would, to focus on what the management decision would have been that they would have challenged, that they would have made differently. And it's essential. Do you have any objection to our remanding to the district court for consideration of this situation in the light of arbitration beginning now? Well, yes. I think the Court should vacate the injunction. And with an international arbitration, I don't know that I can represent that arbitration proceedings have, quote, unquote, begun. What I know is that there has been three arbitrators selected, and there's an arbitration demand, of course. I don't know what will happen next in terms of speed of the arbitration. So I'm not sure if I'm in a position to agree with Your Honor's suggestion. If that is so, why isn't it appropriate to say, rather than to vacate, to ask the Court to reconsider, which an injunction can always be reconsidered, in the light of the proximity, let's say, of arbitration? I believe, Your Honor, that that solution would only exacerbate the very problem we have, which is that this case belongs in arbitration, as Your Honor previously  Why would it exacerbate? Because what we have here is parties who have requested arbitration but are, in fact, litigating the case in the district court. They've brought two motions for contempt sanctions. They're sending over numerous document requests and making numerous demands outside of the arbitration because of the injunction, and there's no irreparable harm to sustain it. They haven't identified any management decision that cannot be remedied by money damages, and that's the reason why they should be in arbitration instead of the district court fighting this out. And what Your Honor has just suggested is that we have still more proceedings in the district court when really everything does belong in the arbitration. Well, why isn't it just best for the parties to get on with the arbitration? The district court said the injunction dissolves when the arbitration is done. What harm is there to leaving this in place and just urging you both to go forward? Everyone seems to acknowledge that an arbitration is the way that this gets resolved, and that's what was agreed to in the partners' agreement. That's just not what has happened. The arbitration hasn't commenced, and we would like the court to vacate. Why has it not begun? Well, earlier on, E.S. Holdings didn't pay the fees to commence the arbitration. They postponed paying the fees again and again, so they delayed the commencement of the arbitration. Is that something that you could have, in fact, assisted on? Well, I don't know if it was our obligation to pay the fees for them in order to get to the arbitration that they had demanded. But you're both saying, you're saying as well, that arbitration is the forum that you ought to be in. Arbitration is the forum that we ought to be in for a number of reasons. It's taken us a while to get there. And in the meantime, we have a parallel litigation going on in the district court when there never should have been one. The rule that this Court should recognize is that the court should be able to do that. What exactly is happening in the district court right now? You said there have been a couple of motions for sanctions. Multiple motions for sanctions against my client on the basis that it allegedly violated the injunction that the district court has in place. Not only that — Has the district court scheduled hearings on those? Are those active? The district court seemed to me to feel like she was done with this. Pending arbitration. The court did say that, but the parties, namely E.S. Holdings, wouldn't let the district court get done with it. I believe that contempt holdings are valid even if an injunction is ultimately dissolved. You're not — you're required to do what an injunction does until it is resolved. So that the contempt actions would survive even if we vacate the injunction. So what are you asking us to do? You know, if you vacate — if you fail to follow the injunction, you're in contempt, and the fact that we then vacate the injunction doesn't do anything for you. I understand your point, Your Honor. That's right. But my point remains is that unless there is an irreparable harm, and there is none, sending this case back to the district court for further proceedings doesn't make sense as a practical matter when everything belongs in the arbitration. Okay. We'll hear from your adversary. Thank you very much. You have two minutes for rebuttal. Mr. Dunn. Sorry, Your Honor. I need to shorten this. May it please the Court. I'm David Dunn. I'm with Hogan Lovells, and I represent the appellee, the Respondent — the Petitioner in the district court. Let me address the issues that were just discussed. Mr. Sutherland does not apparently read the petition. The petition makes clear that the issues before the Court were far broader than the way he characterizes them. I'm at page 827 of the record in the claim for relief section. I don't know what section could be clearer, and I ask the Court to look at section 49 and 50, which say an injunction is warranted here pursuant to 9 U.S.C. 206 in order to restore the status quo, prevent irreparable injury, and to prevent an award from being rendered ineffectual. Paragraph 50 then talks about the likelihood of success and talks about the need for E.S. Holdings and Librero partners to be 50-50 shareholders with joint control of E.S. Technologies and that such composition and structure would be replicated in all of the affiliates and subsidiaries. This is in the claim for relief in the petition. They can't say they didn't have notice of the breadth. But with respect, I mean, the district court seemed to think that she was presenting a new theory of irreparable harm. I understand that she said that she was doing that, but she did that on the basis of what was in the petition, on the basis of what was in the affidavits, on the basis of what was specifically before the court. She wrote a 54-page decision in which she made specific findings of fact and said those findings of fact demonstrated irreparable harm. And they didn't come out of the ether. They didn't come out of the air. They came from the petition. They came from the affidavits. They came from the exhibits to the affidavits. And they came from the hearing. All of this was the ---- But wasn't the injunction that she entered substantially broader than what had been requested? But it was based, as I think Your Honor just said, on the same theories. The fundamental issue, which was obviously before the court, was the question of whether there had been a systematic deprivation. As she said, step by step. But assuming that this does not violate due process for the reasons that you have said, does that mean that the injunction as it stands now is justified? It's a mighty broad injunction. And arbitration is, I take it, you also agree the answer. I mean, this is supposed to be an arbitration. So my question is, how broad an injunction is justified now in the light of the case to the arbitrators who will also decide whether management, you know, all the fundamental issues? We are the petitioners in the arbitration proceeding. We are anxious for this matter to be arbitrated. And it is very clear. This is a somewhat anomalous position, Judge Calabresi. But the judge's order is clear. If you look at the last paragraph of Judge McMahon's order, she says, this injunction shall continue in place until such time as the International Chamber of Commerce shall enter any provisional or final award in connection with a certain arbitration commenced by the petitioner against the respondent on May 1. That's the arbitration proceeding. If they believe that this injunction is overbroad, and we don't believe it is overbroad given the nature of the business and the circumstances, they can go to the ICC. They can go to the arbitration tribunal any time they want. And it is very clear that the arbitration tribunal right now, without any further order of this Court or Judge McMahon, has the authority to modify or vacate or tailor the arbitration – I'm sorry, the injunction to the extent appropriate. And they have made no such application, even though the arbitration has, in fact, been fully existent for two months. I take it you have no objection, then, to an order that makes clear that the arbitrators can modify the injunction as needed or as appropriate? That would be perfectly appropriate, Judge Calabresi, and that would, as I say, literally reflect exactly what Judge McMahon said, not in her opinion, but in the actual injunction itself, which was entered after the respondents were given an opportunity to comment. That is the last paragraph of her order. And we would have no objection whatsoever if this Court's order emphasized and reflected the fact that the injunction that Judge McMahon ordered in aid of arbitration is subject to modification or consideration by the arbitration tribunal. Before the arbitration tribunal reaches its final result, she said specifically any provisional or final award. That is absolutely correct, and I believe it is clear that at any time since the arbitration has been commenced, if the respondents believe they were aggrieved — and by the way, they also haven't sought any modification or limitation based on these circumstances from Judge McMahon. And it's a little bit ironic, Your Honor, because they claim there's no ongoing business here. Now, we dispute that. There are critical issues going on, but clearly there is no day-to-day ongoing business. And Judge McMahon found, and the facts are clear, and they do not dispute any of the factual findings, not one of them. They do not dispute that they systematically, bit by bit, took away what had been a contractual right to participate in the control of the business, not just to be a partner, but to control the business. And the business is doing a whole bunch of things right now and was doing a whole  And they are critical. Let's understand what happened here, Your Honor. What happened here is they went into a Mexican court and they got an injunction to oust our clients from being directors. And then they turned around and used that. The district court reviewed all of that. I mean, we're at a different stage now, and I would like to know what your client has done to pursue the arbitration in a prompt way. That's what needs to be happening here. Your adversary has just alleged that your client was slow in paying fees or what have you, and you've been dragging your feet. Is that incorrect? We have not been dragging our feet. The parties were unable to agree on a chair to the arbitration tribunal. The arbitration tribunal was consummated since early December. Consummated? That means convened? Yes. Okay. Yes, there is an arbitration tribunal. In fact, the terms of reference, which are the terms of reference of the arbitration are sort of the governing rules of the arbitration, Judge Carney. And they have not happened because E.S. Holdings requested an adjournment because of the death of Mr. Flores, their general counsel. So it's their action that has delayed the terms of reference and the commencement of the arbitration. We have paid our fees. The arbitration tribunal is consummated, and they could go to that tribunal any time they wanted. Would you have any objection to a remand with the district court also to consider its injunction and its breadth in the light of what you call the consummation of, I would just say, the creation of the arbitration panel? I think she already considered that. Yeah. Maybe she has. I think she has. But I'm asking you whether you would have any objection to our saying that if she already considered it, then she will be perfectly happy. Judge McMahon knows perfectly well what she's done. I wouldn't have any objection to that, but I would think at this point, in fact, if there were changed circumstances or if the circumstances of the arbitration justified a modification or tailoring of the injunction, that that should be addressed to the arbitrators. But I wouldn't object to a remand to Judge McMahon. My problem is that each of you says, oh, we want to go to arbitration. We want to go to arbitration. Arbitration is just fine. And I'm not altogether sure if one of you has an interest at some point in delaying the arbitration or the other one does. And I think the district court can perfectly well use its injunction to make sure that this happens and happens quickly, because that's where it ought to go. We would like this to proceed as quickly as possible. We are not the party who went to a Mexican court and asked for an injunction against arbitration, Judge Calabresi. They did that. We are not the ones who tried to oust the district court of clear jurisdiction. When we, on May 1st, when I gave notice of this proceeding, I was met by the sending to me of an ex-party order that had been obtained a week earlier from a It's extraordinary. So we're not the ones who have been delaying here, and we would be happy to see that the arbitration proceeds. You did go to court on May 1st, which is a holiday in Mexico. I mean, you know, there's a lot going on in this case that makes one a little bit unhappy by both parties. They tried to stop the arbitration. They brought criminal charges. And you went to court on a day when you knew that Mexico was closed. So, you know, there's plenty of glory on both sides in this case. We went to court on May 2nd, not on May 1st. We gave the notice on May 1st, and it was responded to by Mr. Covarrubias, who lives in Houston, not Mexico, within 90 minutes. So there's no question that they had notice on May 1st. They didn't show up on May 2nd. They had due process. I might see my time. We have the arguments. That's right. Thank you very much. Mr. Sutherland, you have two minutes of rebuttal. Well, the party that benefits from the delay in the arbitration is the one that is receiving the benefits from the district court, and that would be E.S. Holdings. But I'm told that my client would accept a remand for reconsideration if that court, if this court thinks that is the best. Reconsideration of what issue? Whether the injunction should remain in place in light of. Do you agree that the terms of the injunction anticipate that it stays in place until the tribunal enters any provisional or final award? So you could apply to the tribunal. We could apply to the tribunal. For provisional relief if you needed it. Isn't that right? That's right. I just don't know when that will happen, and in the meantime. What more would need to happen if the tribunal is now consummated, I gather? You need to decide on some rules, but you can all make that happen and apply for provisional relief. Isn't that right? At some point in time, but I don't know how quickly that will move. If it is there, what keeps you, rather than coming to us and asking that there be changes, or going to the district court and asking to be changes, from going to the arbitral panel and saying there should be changes? What keeps you from doing that tomorrow? Well, Mr. Dunn mentioned that our general counsel, Mr. Flores, passed away, and that has interrupted things with the company. I'm sorry for that. The terms of reference are something that the parties need to agree on or litigate, and then the arbitration will begin. I'm sorry, I just don't have an exact schedule for you. I'm not talking about the arbitration generally. I'm talking about the relief that you are asking from us, and which you have just said you conceded we could ask the district court to give you. But if that is so, what keeps you now from going to the arbitration panel and asking for the very same relief that you are asking now? And whether Counsel Flores or whoever isn't there doesn't make any difference in that, does it? I don't know what the procedure is with the arbitration panel and what the next steps will be or what the schedule for that will be. I understand that it will happen in the nearer future rather than in the distant future, but I can't — I'm sorry, Judge Calabresi, I cannot give you a date or say what our next filing will be. I just don't know the answer to that question. And if the court in a situation like this identifies an irreparable harm that the parties didn't, it has an option. It didn't have to do what it did. It could have issued a TRO. Then the parties could have come back and presented the legal argument. You did have an opportunity, though, to respond to the proposed injunction, right? You had several days in May. At that point, the court had already decided to grant the motion of preliminary injunction, and it said in no uncertain terms, do not come back to me. Go to the Second Circuit if you have any problems with my ruling. And that's exactly what we've done. Thank you very much. We have the arguments and we will reserve decision.